# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
# CENTRAL DIVISION

| | |
|---|---|
| CINNAMON HILLS YOUTH CRISIS CENTER,<br><br>　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>SAINT GEORGE CITY,<br><br>　　　　　　　Defendant. | **MEMORANDUM DECISION and ORDER**<br><br>Case No. 2:09-cv-00534-TC-SA<br><br>Judge Tena Campbell |

　　　　Cinnamon Hills Youth Crisis Center (Cinnamon Hills) is a residential treatment center for young people with mental, emotional, physical, or behavioral disabilities. Cinnamon Hills operates a facility located on St. George Boulevard, St. George, Utah. Cinnamon Hills owns a motel, the Ambassador Inn, also located in St. George. When Cinnamon Hills sought permission from the city of St. George (the City) to expand its treatment facilities to include a "step-down" program on the top floor of the Ambassador Inn (the bottom floor of the Ambassador Inn would still operate as a motel), the City denied its request.

　　　　Cinnamon Hills brought this lawsuit claiming that the City's refusal constituted intentional discrimination and failure to reasonably accommodate in violation of three federal statutes: the Americans with Disabilities Act (ADA), the Rehabilitation Act (RA), and the Fair Housing Act (FHA). The City has now moved for summary judgment on the grounds that Cinnamon Hills cannot show that it was treated in a manner differently than non-disabled individuals and cannot show that its request for accommodation was reasonable and necessary. The City also argues that the FHA does not apply to Cinnamon Hills' request because the Ambassador Inn is not a dwelling.

The court agrees with the City and grants the motion for summary judgment on all claims.

BACKGROUND

Cinnamon Hills offers inpatient treatment for troubled youth. The current Cinnamon Hills facility occupies two buildings, one where the Behavior Management students reside when they are first placed at Cinnamon Hills and a second less restrictive facility that houses the Life Skills students, administrative offices, and common spaces. Students graduate to the Life Skills program after demonstrating good behavior for a certain amount of time. Cinnamon Hills is not at capacity in either the Behavior Management or Life Skills facilities. Currently and for the last five years, as part of their therapy, residents of the Life Skills facility clean the rooms at the Ambassador Inn after guests have left and perform other jobs that do not pose a risk to guests.

Relevant Zoning Provisions

The Ambassador Inn is located in a C-3 commercial zone. In the City, C-3 general commercial zoning exists "to provide space within the city where nearly all types of commercial goods and services may be provided." St. George City Code § 10-10-1(C) (emphasis added). Some of the commercial establishments permitted in C-3 zoned property include hospitals, nursing homes, timeshare units, and residences for commercial buildings that require 24-hour surveillance or monitoring. § 10-10-2. Residential units located above office, retail, or commercial space are not permitted on C-3 zoned property. § 10-10-2. Additionally, and significant to this case, St. George City Code § 3-2P-3.F does not allow guests in hotel or motels to stay more than twenty-nine days.[1]

---

[1] St. George City Code § 3-2P-3.F reads: "No person shall occupy any unit or combination of units at any one motel for longer than twenty nine (29) consecutive days, and no motel shall permit any person to occupy any unit or combination of units on the motel premises

2

Before a recent change to the zoning regulations, the City allowed residential treatment facilities such as Cinnamon Hills to operate in commercial zones including property zoned as C-3. Now residential treatment facilities exist only as a conditional use in certain agricultural zones subject to restrictions. These restrictions include a restriction that the conditional use permit applicant conduct a community impact study and that the conditional use permit be granted for a specific number of people as determined appropriate by the city council in light of the community impact study. The existing Cinnamon Hill facility is located in a C-2 zone as a pre-existing nonconforming use.

Cinnamon Hills' Request for Accommodation

On April 3, 2009, Cinnamon Hills' attorney submitted a written request for reasonable accommodation in order to start a "step-down" program for students who no longer require the restrictions imposed on Life Skills students. Specifically, Cinnamon Hills requested "(1) that it be excused from the numerical limitations under which it now operates, and (2) that it be permitted to house up to 60 students on the upper floor of the Ambassador Inn . . . while the Ambassador Inn continues to operate as a motel." (Letter from Kathryn Balmforth to St. George City Council at 1, April 3, 2009, attached as Ex. O to Mem. in Opp. to Mot. for Summ. J.) Cinnamon Hills explained that its request was "necessary because of the acute lack of 'step-down' programs offering like skills training and continuing small group and individualized academic instruction." (Id. at 2.) Cinnamon Hills attorney stated that its request was "reasonable because they pose no threat to the health, safety or property of the citizens of the

---

for longer than twenty nine (29) consecutive days. This subsection shall not apply to federal, state, or municipal law enforcement or emergency personnel, or to motels renting, leasing, or registering motel units to such personnel."

City." (Id. at 4.) Cinnamon Hills proposed two ways that the City could grant its request for reasonable accommodation: (1) issue a "conditional use permit for Ambassador Motel, recognizing its unique status," or (2) "continue to license the Ambassador Inn as a motel, waiving any requirements of the City's motel ordinances which would conflict with the uses to which Cinnamon Hills would be making of the upper floor." (Id. at 4.)

After receiving Cinnamon Hills' request for reasonable accommodation, an attorney for the City contacted Cinnamon Hills' attorney Kathryn Balmforth seeking more specific information about the nature of the program. Ms. Balmorth's response indicated that Cinnamon Hills would use the Ambassador Inn for classrooms and would add kitchen facilities. (Letter from Kathryn Balmforth to Paula Houston, April 17, 2009, attached as Ex. Q to Mem. in Opp. to Mot. for Summ. J.). Further, Ms. Balmforth clarified that the program would not be a separate residential treatment facility, but would instead operate under Cinnamon Hills' already existing license. This would be required by the State of Utah because the Ambassador Inn does not have, and would not immediately have a kitchen facility.

On April 28, 2009, the City Attorney rejected Cinnamon Hills' request for reasonable accommodation on the grounds that nobody, regardless of disability, is allowed to reside in a C-3 zone or in a motel. (the "April 28 Decision") The request was not submitted to the St. George City Council. Based on the denial, Cinnamon Hills brought this lawsuit.

The City now moves for summary judgment on the grounds that the FHA does not apply to the Ambassador Inn because it is not a "dwelling," because neither the City's April 28th decision nor its zoning scheme have a disparate impact on the disabled, and because neither the April 28th decision nor the census requirement imposed on residential treatment facilities

4

intentionally discriminate against the disabled. The City alternatively argues that it denied Cinnamon Hills' request for accommodation on public safety grounds.

Cinnamon Hills responds that the Ambassador Inn will be used as a "dwelling" under the proposed request for reasonable accommodation, that relegating residential treatment facilities to agriculturally zoned property constitutes intentional discrimination, that the City's denial of its request for accommodation was discriminatory, and that the proposed accommodation creates no public safety risk.[2]

## ANALYSIS

The court grants summary judgment when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court "view[s] the evidence and make[s] all reasonable inferences in the light most favorable to the nonmoving party." N. Natural Gas Co. v. Nash Oil & Gas, Inc., 526 F.3d 626, 629 (10th Cir. 2008).

Cinnamon Hills brings claims under the FHA, ADA, and RA for St. George's rejection of its accommodation request. Because the Ambassador Inn is not designed or intended for occupancy as a residence, the court grants summary judgment for St. George on the FHA claim. The court also grants summary judgment for St. George on the ADA and RA claims because Cinnamon Hills has not shown intentional discrimination, disparate impact, or failure to accommodate in St. George's application of its zoning laws.

---

[2] Cinnamon Hills conceded that it will not bring claims against individual defendants for civil penalties and punitive damages. The court therefore dismisses those claims.

Fair Housing Act Claims

Under the FHA, it is unlawful for the City "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of . . . a person . . . intending to reside in that dwelling after it is so sold, rented, or made available . . . ." 42 U.S.C. § 3604(f)(1)(B). "[D]iscrimination includes . . . a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling . . . ." 42 U.S.C. § 3604(f)(3)(B). The FHA defines a "dwelling" as "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families." 42 U.S.C. § 3602(b).

Cinnamon Hills argues that its proposed use of the Ambassador Inn would make it a dwelling, and therefore the City violated the FHA by denying its accommodation request. The City responds that courts have unanimously held that hotel and motel rooms are not dwelling and that Cinnamon Hills' proposed use, which has not yet happened, would not transform the motel into a dwelling.

In support of its argument, St. George relies heavily on the factors used by an Eleventh Circuit decision, Schwarz v. City of Treasure Island, 544 F.3d 1202 (11th Cir. 2008). In Schwarz, the court held that whether a building was a "residence" or "dwelling" was based on factors such as whether the occupants treat the building like a home by, for instance, cooking their own meals, cleaning their own rooms, maintaining the premises, doing their own laundry, and spending free time together in the common areas. Id. at 1214-15. "[T]he longer the typical occupant lives in a building, the more likely it is that the building is a dwelling." Id. at 1215.

6

Cinnamon Hills responds that the court should instead apply a standard set forth in United States v. Hughes Memorial Home, 396 F. Supp. 544 (W.D. Va 1975), and applied by the District of Kansas in 2004, Home Quest Mortg. LLc v. Am. Family Mutual Ins. Co., 340 F. Supp. 2d 1177.  In Home Quest, the District of Kansas noted that the terms "dwelling" and "residence" should be constructed generously to further the FHA's broad remedial purpose. The court defined "residence" as "a temporary or permanent dwelling place, abode or habitation to which one intends to return as distinguished from the place of temporary sojourn or transient visit." Id. at 1184.

Regardless of Cinnamon Hills' intended use for the Ambassador Inn, the motel is not now a building designed or intended for occupancy as a residence.  Even under a generous reading of the term "dwelling" the Ambassador Inn does not currently qualify.  If the FHA applies to the Ambassador Inn merely because Cinnamon Hills wishes it could use it as a dwelling, then the FHA would apply to any building or potential building anywhere that could conceivably be converted to a dwelling.  This goes beyond the reach of the FHA.  Therefore, the court grants summary judgment to St. George on Cinnamon Hills' FHA claim.

Americans with Disabilities Act and Rehabilitation Act Claims

Both the ADA and the RA prohibit governmental entities from discriminating against the disabled in municipal zoning decisions. See Tsombanidis v. West Haven Fire Dep't, 352 F.3d 565, 573 (2d Cir. 2003) ("[T]he ADA prohibit[s] governmental entities from implementing or enforcing housing policies in a discriminatory manner against persons with disabilities."), Innovative Health Sys. v. City of White Plains, 117 F.3d 37, 44 (2d Cir. 1997).  The ADA grants the same amount of protection for the disabled as the RA.  42 U.S.C. § 12201(a) ("[N]othing in

this Act shall be construed to apply a lesser standard than the standards applied under Title V of the Rehabilitation Act of 1973."). "[T]he ADA and the [RA] are addressed to rules that hurt people with disabilities by reason of their handicap, rather than hurt them solely by virtue of what they have in common with other people." Henrietta D. v. Bloomberg, 331 F.3d 261, 276 (2d Cir. 2003); see also Wis. Cmty. Servs. v. City of Milwaukee, 465 F.3d 737 (7th Cir. 2006). Cinnamon Hills maintains that the City violated both the ADA and RA in its April 28 Decision denying Cinnamon Hills' request for reasonable accommodation and by allowing residential treatment facilities only in certain agricultural zones after a community impact study has been conducted and only for a certain number of residents.

Claims under the ADA and RA may be brought under three separate theories of liability: (1) intentional discrimination, (2) disparate impact, or (3) failure to accommodate. See Wis. Cmty. Servs., 465 F.3d at 753. "A disparate impact analysis examines a facially-neutral policy or practice, such as a hiring test or zoning law, for its differential impact or effect on a particular group. Disparate treatment analysis, on the other hand, involves differential treatment of similarly situated persons or groups." Bangerter v. Orem City Corp., 46 F.3d 1491, 1501 (10th Cir. 1995) (quotation omitted). A claim of discrimination based on a failure to reasonably accommodate is distinct from a claim of discrimination based on disparate impact. See, e.g., Wis. Cmty. Servs., 465 F.3d at 753; McGary v. City of Portland, 386 F.3d 1259, 1266 (9th Cir. 2004); Henrietta D., 331 F.3d at 276-77. Cinnamon Hills seeks to establish liability under each of these theories.

Intentional Discrimination

Cinnamon Hills takes the position that the April 28 Decision and the census requirement

applicable to residential treatment facilities both constitute intentional discrimination against the disabled. A plaintiff can show intentional discrimination either by proving that it has been treated differently than similarly situated non-disabled parties or by producing "direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the challenged decision." Budnick v. Town of Carefree, 518 F.3d 1109, 1114 (9th Cir. 2008).

To establish a prima facie case of disparate treatment discrimination, a plaintiff must show that

> (1) the plaintiff is a member of a protected class; (2) the plaintiff applied for a [modification of a zoning ordinance] and was qualified to receive it; (3) the [modification] was denied despite plaintiff's qualification; and (4) defendant approved a [modification] for a similarly situated party during a period relatively near the time it denied plaintiff's request.

Id. Once the plaintiff has presented evidence of discrimination, "[t]he burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action. The plaintiff must then prove by a preponderance of the evidence that the defendant's asserted reason is a pretext for discrimination." Id.

Cinnamon Hills' request for reasonable accommodation sought a modification of the zoning ordinance limiting motel stays to twenty-nine consecutive nights.[3] In conjunction with that request, Cinnamon Hills also sought a modification of the number of students it can treat. Although Cinnamon Hills argues that the numerical limitations established in St. George City Code section 10-5-3 are discriminatory, that code provision is not relevant here. The City's

---

[3] Cinnamon Hills' request for reasonable accommodation could also be read to seek relief from the prohibition on mixed residential and commercial use in the C-3 zone. The same disparate treatment analysis applies to both regulations.

action that is the basis of this lawsuit is its refusal to allow Cinnamon Hills to use the Ambassador Inn for its step-down program, a program that would violate the City's ordinance which prohibits stays of more than twenty-nine days. And Cinnamon Hills has not put forth evidence of any similarly situated party who received a modification of the twenty-nine day ban. The fact that law enforcement personnel and emergency personnel are allowed to stay longer than twenty-nine days does not change the outcome because they are not similarly situated to the young people who would be part of the step-down program. The evidence shows that these young people would be subject to strict, continuous supervision, unlike the law enforcement and emergency personnel. In addition, allowing law enforcement to stay in motel rooms furthers a legitimate government safety interest. No reasonable jury could conclude that law enforcement and emergency personnel are similarly situated to disabled youth.

Although Cinnamon Hills cannot establish a prima facie case of disparate treatment, it can move forward in the burden-shifting analysis if it can show that the City had a discriminatory motive in failing to grant the zoning modification. Cinnamon Hills seeks to show discriminatory motive by pointing to the City's recent modification to its zoning laws preventing residential treatment facilities from being established outside agricultural zones and requiring a conditional-use permit. It also points to the ease with which the City could accommodate Cinnamon Hills' request by waiving the twenty-nine day provision for the top floor of the Ambassador Inn. But neither of these arguments are relevant to whether the City had a discriminatory motive when it refused to waive the universally applicable twenty-nine-day stay requirement. See Dev. Servs. v. City of Lincoln, 504 F.Supp. 2d 726, 738 (holding that a city's prior denials of requests for reasonable accommodation was not evidence of discriminatory animus in its application of a

zoning regulation).

### Disparate Impact of Zoning Regulations

"To establish a prima facie case of disparate impact, a plaintiff must prove that the challenged practice actually or predictably results in discrimination." Corp. of the Episcopal Church v. West Valley City, 119 F. Supp. 2d 1215, 1219 (D. Utah 2000).[4] "A claim of disparate impact, unlike a claim of disparate treatment, does not require a finding of intentional discrimination." Mountain Side Mobile Estates P'ship v. Sec'y of Hous. & Urban Dev. ex rel. VanLoozenoord, 56 F.3d 1243, 1250 (10th Cir. 1995).

Cinnamon Hills' sole argument in support of its disparate impact claim is that some people are allowed to reside for longer than 29 days in a commercial zone. Specifically, law enforcement may stay for longer than 29 days in a motel and the commercial zoning laws allow those who care for a facility that requires 24-hour supervision, such as storage units, to reside in commercial zoning. But these few exceptions do not prove that the St. George zoning regulations, including the 29-day stay limitation in motels and the general prohibition on residing in commercial zones, actually or predictably result in discrimination against the disabled. Therefore, the court grants summary judgment for St. George on Cinnamon Hills' disparate impact claim.

### Failure to Accommodate

Cinnamon Hills claims that the City's denial of its request for reasonable accommodation was discriminatory because the request was reasonable and necessary. Cinnamon Hills argues

---

[4] Although most cases of disparate impact discrimination and failure to accommodate based on zoning regulations are brought under the FHA, the analysis is the same under the ADA. See, e.g., Tsombanidis, 352 F.3d at 575.

that it submitted evidence to the City that its proposed accommodation was necessary to avoid discrimination. Specifically, it informed the City of the need and benefit for a "step-down" program for its students. The City counters that Cinnamon Hills did not provide it with sufficient information to determine whether the proposed accommodation was reasonable and necessary, or, alternatively, that the proposed accommodation was not actually reasonable or necessary.

Accommodation is required "for persons with handicaps if the accommodation is (1) reasonable and (2) necessary (3) to afford handicapped persons equal opportunity to use and enjoy housing." Corp. of the Episcopal Church, 119 F. Supp. 2d at 1221; see also Wis. Cmty. Servs., 465 F.3d at 751 ("[T]he plain language of the regulation . . . makes clear that an accommodation only is required when necessary to avoid discrimination on the basis of a disability."). "[A] reasonable accommodation involves changing some rule that is generally applicable so as to make its burden less onerous on the handicapped individual." Bangerter, 46 F.3d 1491 at 1501 (quotation omitted); see also Keys Youth Servs. v. City of Olathe, 248 F.3d 1267, 1275 (10th Cir. 2001).

"The 'necessary' element . . . requires the demonstration of a direct linkage between the proposed accommodation and the 'equal opportunity' to be provided to the handicapped person." Bryant Woods Inn v. Howard County, 124 F.3d 597, 604 (4th Cir. 1997). In Wisconsin Community Services, the Seventh Circuit held that a city was not required to accommodate an organization's request to open a non-profit health clinic in an area not zoned for such a facility if the organization could not to "show that, 'but for' [the] disability, it would have received the ultimate benefit being sought." Wis. Cmty. Servs., 465 F.3d at 754-55. The court analogized the request to modify the zoning scheme to an employee's request to alter a seniority scheme in the

12

workplace. Id. at 755. Unless the disabilities of those served by the organization were a but-for cause of its inability to find a suitable facility, the organization could not meet the necessity prong. Id.

Cinnamon Hills' request to house "step-down" students on the top floor of the Ambassador Inn is not necessary to avoid discrimination on the basis of disability. Although Cinnamon Hills' request for reasonable accommodation outlines the benefits the proposed "step-down" program would have for the disabled youth that it serves, it did not establish that the universally applicable zoning provisions were the but-for cause of its inability to open such a program. In fact, nowhere in the information provided to the city did Cinnamon Hills show that the City's denial of this accommodation would prevent Cinnamon Hills from creating such a program in a different location. The City did not deny Cinnamon Hills' request to house students on the top floor of a motel because the students are disabled. Rather, the City denied the request because noone is allowed to reside in a commercial zone or stay in a motel room for longer than twenty-nine nights. Because Cinnamon Hills did not establish that the disability of its students was the "but-for" cause of its inability to open a "step-down" program, it has not met the "necessity" prong.

## ORDER

For the reasons stated above, the court GRANTS summary judgment for the City on all claims.

DATED this 7th day of January, 2011.

BY THE COURT:

_____
TENA CAMPBELL
United States District Judge